**Julie Vandiver**
**Assistant Federal Public Defender**
**Email: julie_vandiver@fd.org**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**

**Attorney for Petitioner**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DRUCILLA RAMONA GRAVES,** | Case No. 6:23-cv-00335-IM |
| Petitioner, | |
| v. | **AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
| **DELORES MATTEUCCI,** | |
| Respondent. | |

Drucilla Graves, by and through undersigned counsel, hereby petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, vacating her convictions and freeing her from the jurisdiction of the Psychiatric Security Review Board (PSRB) and/or from detention in the Oregon State Hospital. Petitioner alleges the following:

**A.  INTRODUCTION**

1. Drucilla Graves is in custody of the Oregon State Hospital and the PSRB pursuant to a 2013 judgment of the Marion County Circuit Court adjudging her guilty except for insanity for the

crimes of Burglary in the First Degree and Unlawful Use of the Weapon.[1] On October 5, 2012, Ms. Graves was arrested and charged with the crimes of violation of parole, violation of restraining order, burglary 1, unlawful use of weapon, and resisting arrest. Resp. Ex. 112 at 207. The incident occurred at the home of Ms. Graves's mother, Beverly Schnee. Ms. Schnee was in the hospital and the house was otherwise unoccupied. Though there was a restraining order in place, Ms. Schnee had previously allowed Ms. Graves to stay in her home. Ms. Schnee "continually told [Ms. Graves] to find some place to go but never tried to force [her] out or called the police." Resp. Ex. 112 at 204. After a neighbor spotted Ms. Graves entering the home, the police, with a police dog, entered the home with Ms. Schnee's permission. Ms. Graves hid in the bathroom with her cat and a kitchen knife. The police threatened Ms. Graves with the dog. According to the police, she responded that she had a knife and if the police kicked in the door, she would stab the dog and the officers. *Id.* After further discussions, police and Ms. Graves agreed that if the dog was sent out of the house, she would slide the knife under the door. She did so and emerged from the bathroom holding her cat. According to the police report, Ms. Graves' stated reason for bringing the knife into the bathroom was for protection and to cut a pizza. Resp. Ex. 112 at 209.

2. A grand jury returned an indictment on February 21, 2013, charging Ms. Graves with burglary in the first degree, an A felony, unlawful use of a weapon, a C felony, and contempt of court. Resp. Ex. 112 at 257. The contempt of court charge was based on allegations that Ms. Graves appeared at the hospital elevator where her mother was hospitalized.

---

[1] Drucilla Graves is a transgender woman. While many of the primary documents in this matter use Ms. Graves' previous name, Edward Schnee, this Amended Petition uses her current name and pronouns.

3. Ms. Graves was represented at trial by Daniel Carroll, who filed a notice of intent to rely on a mental state defense. Resp. Ex. 112 at 259. Ms. Graves was evaluated by Alexander C. Duncan who characterized Ms. Graves' mental illness as schizoaffective disorder. Resp. Ex. 112 at 279. With respect to the contempt of court charge for violating the restraining order, Dr. Duncan opined that Ms. Graves did understand that she was not supposed to be within 150 feet of her mother, that she could form the requisite intent, and that she could conform her conduct to the requirements of the law. Resp. Ex. 112 at 280. With respect to the burglary charge, Dr. Duncan opined that Ms. Graves did not understand that she could not be within her mother's home because she was 150 feet away from her mother who was at the hospital, but that "understanding or appreciation appears to be rationally based and not significantly undermined by [her] mental illness." Resp. Ex. 112 at 281. With respect to the unlawful use of a weapon, Dr. Duncan found that Ms. Graves' paranoid delusions about the CIA caused Ms. Graves to "be confused and delusionally paranoid" about the true intent of the officers in her mother's home. Resp. Ex. 112 at 282. Because the unlawful use of a weapon was the predicate crime for the burglary charge, Dr. Duncan found that Ms. Graves "lacked substantial capacities to appreciate the criminality of [her] conduct related to the charges of Burglary in the First Degree (A Felony) and Unlawful Use of a Weapon (C Felony)." Resp. Ex. 112 at 282.

4. On May 13, 2013, Ms. Graves purportedly waived her right to a trial by jury and proceeded to a stipulated facts trial where the circuit court found Ms. Graves guilty except for insanity for the reasons set forth in Dr. Duncan's evaluation.

5. The order of the Marion County Circuit Court was for Ms. Graves to be placed under the jurisdiction of the Oregon Health Authority for care, custody and treatment while hospitalized and

the PSRB while on conditional release for a maximum period of time not to exceed 25 years. Ex. 112 at 89.

6. Ms. Graves did not file a direct appeal challenging her conviction. On May 1, 2019, she filed a pro se postconviction petition challenging her conviction. She raised one claim alleging "At the time of my trial, I had been in solitary confinement at the Marion Co. jail for 6 months. I was unable to aid and assist my attorney at the trial. Nevertheless, the judge found me GEI, based on a plea agreement I did not authorize + was misrepresented to me."

7. Travis Dickey was appointed to represent Ms. Graves in the postconviction proceeding and filed an amended petition alleging a claim of ineffective assistance of counsel based on counsel's failure to ensure that Ms. Graves' waiver of a jury trial was knowing and intelligent. The circuit court held that the petition was filed outside the statutory time limit. The court accepted Ms. Graves' assertions that her mental disorders prevented her from meeting the statutory deadline. The court held, however, that such excuse did not qualify as grounds to toll the limitations period under ORS 138.510(3) under existing precedent.

8. Her appeal of that decision, *Graves v. Matteucci*, S069468, is stayed pending a disposition in *Ingle v. Matteucci*, S069222. *Ingle*, which was argued on September 30, 2022, will decide "whether a petitioner's mental illness and intellectual disability could ever justify applying the escape clause for untimely petitions for post-conviction relief in ORS 138.510(3)." *See* Petition for Review at 6 in *Ingle v. Matteucci*, S069222 (internal quotation omitted).

9. Ms. Graves has been under the custody of the Oregon State Hospital or the PSRB since 2013. She has been conditionally released three times. On April 5, 2022, she was conditionally released to Alternatives in St. Helens, a mental health group home administered by Columbia

County. The designated supervisory agent, Amy Schubert, alleged that in early May, Ms. Graves left the facility without permission, and when called back, turned toward the doorway and charged in an angry and hostile manner. A hearing was held on September 30, 2022, where Ms. Graves was represented by Bailey Moody. Moody objected to numerous exhibits on the grounds that they were hearsay. Ms. Schubert, whose allegations formed the basis for her revocation, was not present and did not testify. Moody objected that Schubert's absence impaired the defense's ability to cross-examine her and the board's ability to assess her credibility.

10. The state called Dr. Simrat Sethi, staff psychologist at the Oregon State Hospital. He was Ms. Graves' treating psychologist at the Oregon State Hospital for 18 months before she was conditionally released to Alternatives. At the time of the hearing, Ms. Graves' care had been transferred to Dr. Ryan Bell. Dr. Sethi testified that the alleged reason for Ms. Graves revocation was that she "became increasingly agitated and disruptive, was unable to participate in a conversation, then left the facility without authorized—authorization, so engaged in an unauthorized absence." Resp. Ex. 112 at 28. Dr. Sethi testified that he reviewed a written statement by Amy Schubert describing that "Ms. Graves was very agitated and aggressive, verbally threatened Ms. Schubert and charged at her, and then ran out of the facility." Resp. Ex. 112 at 30.

11. Dr. Sethi testified that Ms. Graves current diagnosis is a schizoaffective disorder bipolar type. Resp. Ex. 112 at 31. Dr. Sethi testified that he was aware from Dr. Bell's note that Ms. Graves was taking her medications voluntarily but also that her chart indicated she was on an involuntary medication status. Resp. Ex. 112 at 31. Dr. Sethi testified that when Ms. Graves decompensates, she displays behavioral and verbal agitation and persecutory delusions. *Id.*

12. Ms. Graves called Dr. Bell, who had been treating Ms. Graves in the month preceding her revocation hearing. Dr. Bell was also familiar with Ms. Graves' records from her previous admissions to the Oregon State Hospital as well as her "GEI file, which included the original assessment, police reports" and discharge summaries and records from Alternatives. Resp. Ex. 112 at 48. Dr. Bell testified that at the time of her revocation hearing, Ms. Graves was taking bupropion, an antidepressant/anxiolytic; a low dose of Latuda a second-generation antipsychotic primarily for mood, and lamotrigine, also for mood-stabilization. *Id.* at 49. Dr. Bell testified that Ms. Graves was listed as being on involuntary medications, but that she has been taking her medication consistently, and he just had not submitted the paperwork to change her from involuntary status. *Id.* at 49-50. Dr. Bell further indicated that he had no issues with Ms. Graves and that they worked well together. *Id.* at 50-51. Dr. Bell also testified that the other patients in the unit with Ms. Graves are "very, very symptomatic, extremely unwell." Resp. Ex. 112 at 52. Ms. Graves has been in verbal altercations with the other patients because those other patients have difficulty with boundaries, especially with sexual inappropriateness. *Id.* at 52. Other patients have been physically intrusive toward Ms. Graves. *Id.* Dr. Bell did not believe that Ms. Graves posed a danger to the public and that Ms. Graves is not benefiting from the hospital setting. Resp. Ex. 112 at 53, 56. Dr. Bell also testified that most of Ms. Graves trouble in the state hospital was based on her personality and that the hospital was counter-therapeutic for her. According to him, she would do better in a less restrictive setting. Resp. Ex. 112 at 54-56.

13. The order of revocation held that Ms. Graves had a qualifying mental disorder, namely schizoaffective disorder. Resp. Ex. 112 at 8. It further held that without adequate supervision and treatment, Ms. Graves would present a substantial danger to others. *Id.* The Board considered the

expert testimony of Dr. Bell but discounted it, reasoning that Dr. Bell had only worked with Ms. Graves for a limited time and that his opinion was inconsistent with other evidence. The Board found it was able to assess Ms. Schubert's credibility based on her testimony at the board in a proceeding before the alleged incident occurred. Resp. Ex. 112 at 10.

14. Ms. Graves filed an appeal from the revocation which remains pending in the Oregon Court of Appeals in case number 179526. That appeal raises the following three issues:

> a. The PSRB erred, in revoking Petitioner's conditional release, because there was not substantial evidence to support revocation.
>
> b. The PSRB erred, in denying Petitioner a request for evaluation, by finding that Petitioner could not be adequately controlled and treated in the community on conditional release.
>
> c. The PSRB erred, in finding there was jurisdiction, Petitioner no longer had a qualifying mental disorder and jurisdictional discharge was appropriate.

The briefs in this appeal have been submitted and oral argument is scheduled for September 13, 2023.

15. Ms. Graves filed a federal habeas petition pursuant to 28 U.S.C. § 2241 alleging four claims of constitutional error:

> a. Conditional release was revoked without good cause to due to discriminate based on race, political affiliation, and personal bias on the part of a PSRB monitor/group home administrator who has since been fired for similar treatment of other residents.

Page 7   AMENDED PETITION FOR WRIT OF HABEAS CORPUS

    b. The PSRB does not have jurisdiction over me while hospitalized at OSH. According to my sentencing, I was to be supervised by SHRP (State Hospital Resource Panel) while at OSH, due to my Tier 2 (non-measure 11) charges. SHRP was to have the discretion to conditionally release or discharge me. My sentence was effectively changed five years after being imposed when SHRP was disbanded.

    c. The hearing conducted by the PSRB, like all their hearings, was unconstitutional, violating all standard rules of evidence. The PSRB accepted third-hand hearsay from an OSH doctor with no first-hand knowledge of the alleged evidents (sic) or facts to which he testified, while ignoring the testimony of my then-current treating physician at OSH who recommended full discharge and alternatively, reinstatement of CR.

    d. The revocation of my conditional release violates the Americans with Disabilities Act and constitutes a breach of contract on the part of the PSRB, Oregon State Hospital and Amy Schubert/Columbia County Mental Health. I fulfilled my obligations under the release agreement to the best of my ability as a person labelled as mentally disabled. I did not receive reasonable accommodation for this disability.

16. The state responded raising only the defense of exhaustion and argued that Ms. Graves' petition should be dismissed without prejudice to refiling.

17. This Amended Petition is attached to a motion for leave to amend and filed concurrently with a motion to stay the federal habeas proceeding and hold it in abeyance pending the disposition of both the appeal of the revocation and the petition for review for the postconviction proceeding.

B.     **CLAIMS FOR RELIEF**

   1.     **Ms. Graves received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments at her original trial because trial counsel failed to ensure that Ms. Graves agreement to a stipulated facts trial was knowingly, intelligently, and voluntarily made.**

18. In support of this claim, Ms. Graves pleads the following facts: Trial counsel failed to ensure that Ms. Graves's agreement to a stipulated facts trial was knowingly, intelligently, and voluntarily made. Trial counsel failed to explain the consequences of entering a stipulated facts trial in an accurate manner or to assure that Ms. Graves shared counsel's understanding. Trial counsel unreasonably failed to determine whether Ms. Graves mental state pretrial which was undermined by lengthy solitary confinement and powerful psychotropic medication was such that she could execute a knowing and voluntary waiver of her rights to a jury trial. Mr. Carroll's inadequate advice and Ms. Graves's vulnerable mental state rendered any waiver involuntary and unknowing. Ms. Graves did not appreciate that she would not have an opportunity to present her case and prove her innocence at the trial. She also did not understand or knowingly agree to supervision of the PSRB. Had Mr. Carroll given reasonable and appropriate advice, or adequately assessed her understanding or ability to enter a waiver, Ms. Graves would not have entered into a stipulated facts trial and would have opted for a jury trial.

**2.      Ms. Graves's revocation proceeding was fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment.**

19. Ms. Graves revocation proceeding was fundamentally unfair in violation of the due process clause of the Fourteenth Amendment. The facts in paragraphs 9-13, are incorporated by this reference as if set forth fully herein. The proceeding was fundamentally unfair in that:

    a.     There was no substantial evidence that Ms. Graves committed a rule violation, was dangerous, or otherwise acted in a manner that warranted her revocation. Dr. Sethi's testimony lacked foundation and the board should not have permitted nor considered his testimony.

    b.     Ms. Graves was not allowed to confront Amy Schubert or present a complete defense. Had Ms. Graves been permitted to cross examine and confront Ms. Schubert, her testimony and credibility would have been undermined including by inquiring into the reasons that she was no longer in her position at Alternatives, and probing into similar issues Ms. Schubert had with other residents.

    c.     There was insufficient evidence that Ms. Graves suffered from a qualifying mental diagnosis, and available contemporaneous evidence from her treating physician, Dr. Bell, showed that she was not a substantial danger to herself or others.

**3.      Ms. Graves has been subject to lengthier and more severe confinement due to her status as a transgender woman in violation of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment.**

20. In support of this claim, Ms. Graves pleads the following facts: Ms. Graves's custody has been extended and she has been subject to more severe forms of confinement due to her status as

a transgender woman. Ms. Graves has been the victim of violence and discrimination during the time of her confinement at the Oregon State Hospital and in community placements. Resp. Ex. 112 at 42, 854. For example, an earlier conditional release was terminated after she was violently attacked by a peer in the group home. Resp. Ex. 112 at 854. Because her extended and heightened confinement is based on discrimination as a member of a protected class, it violates the Equal Protection Clause of the Fourteenth Amendment and the Eighth Amendment.

    **4.**    **Ms. Graves was revoked from conditional release in violation of the Americans With Disabilities Act because the conditional release setting failed to reasonably accommodate her disability.**

21. In support of this claim, Ms. Graves pleads the following facts: Ms. Graves was revoked from her placement at Alternatives upon a finding that she had a qualifying mental disorder and was a danger to herself or others. Ms. Graves does not concede that she has a qualifying mental disorder but argues in the alternative that her revocation violated the Americans with Disabilities Act because Alternatives failed to provide necessary services. The PRSB opinion found that medications are highly effective at mitigating the risk of violence and aggression. Ex. 112 at 9. However, Ms. Graves was not allowed to meet with a medical provider while at Alternatives to determine whether adjustments to her medications were necessary. Ms. Graves had a medication appointment set for May 10th but was revoked before she could see the provider. Resp. Ex. 112 at 45. Her revocation was a result of a failure to provide necessary services and reasonable accommodation under the Americans With Disabilities Act.

### Relief Requested

For the foregoing reasons, Ms. Graves respectfully requests that her amended petition be granted, and that the State of Oregon be ordered to release her within 30 days or provide a new trial and/or

**Page 11 AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

new revocation proceeding. Ms. Graves further requests that she be given leave to further amend this petition following the completion of state court proceedings and for all other relief that law and justice requires.

    Respectfully submitted this 24th day of August 2023.

                                           */s/ Julie Vandiver*
                                           Julie Vandiver
                                           Attorney for Petitioner